## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASHISH AGARWAL, individually and on behalf of all others similarly situated,<br><br>                  Plaintiff,<br><br>        v.<br><br>DIGITALOCEAN HOLDINGS, INC., YANCEY SPRUILL, and W. MATTHEW STEINFORT,<br><br>                  Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>Jury Trial Demanded |

Plaintiff Ashish Agarwal ("Plaintiff"), by and through his attorneys, alleges upon personal knowledge as to his own acts, and upon information and belief as to all other matters, based upon the investigation conducted by and through his attorneys, which included, among other things, a review of documents filed by Defendants (as defined below) with the United States Securities and Exchange Commission (the "SEC"), news reports, press releases issued by Defendants, transcripts of conference calls held by Defendants, and other publicly available documents.

### NATURE AND SUMMARY OF THE ACTION

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired DigitalOcean Holdings, Inc. ("DigitalOcean" or the "Company") securities between February 16, 2023, and August 25, 2023, inclusive (the "Class Period"). This action is brought on behalf of the Class for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a) and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

2.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business. Specifically, Defendants failed to disclose to investors: (1) that Defendants lacked the skills and experience to assess complicated tax matters and therefore did not design or maintain effective controls over the Company's accounting for income taxes; and (2) that, as a result of the foregoing, Defendants' financial statements during the Class Period were inaccurate and materially misleading.

3.    DigitalOcean is an emerging growth company which purports to offer a cloud computing platform, primarily for small to medium sized businesses who have lack adequate resources to support on-premise software development environments. DigitalOcean's customers use its platform for building web and mobile applications, website hosting, and e-commerce, among other uses. DigitalOcean completed an initial public offering ("IPO") on March 26, 2021, in which it issued and sold 16,500,000 shares of common stock to the public at $47 per share.

4.    In its amended Registration Statement filed on Form S-1 with the SEC on March 23, 2021 ("Registration Statement"), DigitalOcean purported to be an emerging growth company, and therefore exempt from certain reporting requirements that are effective against other public companies, including the requirement to have its internal controls over financial reporting audited by its independent registered public accounting firm under Section 404 of the Sarbanes-Oxley Act of 2002. However, DigitalOcean explained that it would be "required, pursuant to Section 404 to furnish a report by management on, among other things, the effectiveness of our internal controls over financial reporting for the fiscal year ending December 31, 2022."

5.    To that end, DigitalOcean disclosed in its Registration Statement that it had:

recently commenced the costly and challenging process of compiling the system and processing documentation necessary to perform the evaluation needed to comply with Section 404 . . . During the evaluation and testing process of our internal controls, if we identify one or more material

weaknesses in our internal controls over financial reporting, we will be unable to certify that our internal controls over financial reporting is effective. A material weakness is a deficiency, or combination of deficiencies, in internal controls over financial reporting, such that there is a reasonable possibility that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis.

6.      Furthermore, DigitalOcean revealed that it had been put on notice of material weaknesses in its internal controls, having just discovered one:

> In the course of preparing our audited consolidated financial statements for the year ended December 31, 2019, we identified a material weakness in our internal controls over financial reporting related to secondary sales transactions by current and former employees. Specifically, we did not design and maintain effective controls to evaluate and assess secondary sales transactions in our common stock to determine, in a timely manner, whether additional compensation expense was incurred based on the nature of the transaction. We have remediated this material weakness, which we believe has addressed the underlying cause of this issue. We have implemented measures designed to improve our internal controls over financial reporting, including monitoring and review procedures related to secondary sales transactions to ensure accounting personnel are timely informed of the transactions and can evaluate and record any additional compensation expense deemed necessary.

> We cannot assure you that the measures we have taken to date, and actions we may take in the future, will prevent or avoid potential future material weaknesses in our internal controls over financial reporting in the future. Any failure to maintain internal controls over financial reporting could severely inhibit our ability to accurately report our financial condition or results of operations.

7.      On February 16, 2023, the start of the Class Period, DigitalOcean published a press release providing the Company's financial statements for the year ended December 31, 2022, and reporting a Net loss attributable to common stockholders of $24.3 million. On February 23, 2023, DigitalOcean republished its Fiscal Year 2022 financial statements in its Annual Report filed with the SEC, which also stated that DigitalOcean's management team "evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2022" and based on that evaluation, "our Chief Executive Officer [Spruill] and Chief Financial Officer [Steinfort] concluded that, as

of such date, our disclosure controls and procedures were effective at the reasonable assurance level."

8.     On May 9, 2023, DigitalOcean filed a Quarterly Report with the SEC containing financial statements for the first quarter of 2023 and stating that DigitalOcean's management had "evaluated the effectiveness of our disclosure controls and procedures as of March 31, 2023," and based on that evaluation, "our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective at the reasonable assurance level."

9.     On August 3, 2023, DigitalOcean announced that it had "identified certain errors within the unaudited condensed consolidated financial statements for the quarter ended March 31, 2023 as included in our Quarterly Report on Form 10-Q for the three months ended March 31, 2023 filed on May 9, 2023" related to the Company's accounting for income tax expense, resulting in an overstatement of income tax expense in the quarter of approximately $18 million. The Company would be restating its first quarter 2023 financials, and announced that this restatement would "also include disclosure of an identified material weakness and that our disclosure controls and procedures were not effective as of March 31, 2023."

10.     The material weakness, however, traced back at least to December 31, 2022, according to DigitalOcean, rendering the Company's Annual Report for the previous year inaccurate as well. Consequently, the Company conceded that it would also restate its financial statements for Fiscal Year 2022, originally filed with the SEC on February 23, 2023.

11.     On this news, DigitalOcean's stock price declined $11.57 per share, or approximately 24.8%, on unusually heavy trading volume to close at $35.11 per share on the following trading day, August 4, 2023.

12.     On August 24, 2023, DigitalOcean issued a press release announcing that the Company's Board of Directors had begun a search for a new CEO to replace Defendant Spruill, who would step down as CEO and board member as soon as his successor was appointed.

13.     On this news, DigitalOcean's stock price declined $2.65 per share, or approximately 8.4%, on unusually heavy trading volume to close at $28.86 per share on the following trading day, August 25, 2023.

## JURISDICTION AND VENUE

14.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and § 27 of the Exchange Act, 15 U.S.C. § 78aa.

16.     This Court has jurisdiction over each Defendant named herein because each Defendant is an individual or corporation who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

17.     Venue is proper in this District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1931(b), as the Company's principal executive officers are located within this District. Moreover, DigitalOcean's securities trade on the New York Stock Exchange, which is located within this District, and the Company conducts substantial business here.

18.     In connection with the acts, omissions, conduct and other wrongs in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

19.     Plaintiff Ashish Agarwal acquired and held shares of DigitalOcean at artificially inflated prices during the Class Period and has been damaged by the revelation of the Company's material misrepresentations and material omissions.

20.     Defendant DigitalOcean is a technology company that purports to offer a cloud computing platform, primarily for small to medium sized businesses. DigitalOcean securities trade on the New York Stock Exchange under the ticker "DOCN." The Company's headquarters are located at 101 6th Avenue, New York, NY 10013. DigitalOcean is incorporated under the laws of Delaware.

21.     Defendant Yancey Spruill has served as DigitalOcean's Chief Executive Officer since 2019 and at all relevant times during the Class Period. On August 24, 2023, the Company announced that Spruill would be stepping down as soon as a successor could be found to replace him. Defendant Spruill signed DigitalOcean's February 22, 2023 10-K and May 9, 2023 10-Q.

22.     Defendant W. Matthew Steinfort has served as DigitalOcean's Chief Financial Officer since January 2023 and at all relevant times during the Class Period. Defendant Steinfort signed DigitalOcean's February 22, 2023 10-K and May 9, 2023 10-Q.

23.     Collectively, Defendants Spruill and Steinfort are referred to throughout this complaint as the "Individual Defendants."

24.     The Individual Defendants, because of their positions at the Company, possessed the power and authority to control the content and form of the Company's annual reports, quarterly reports, press releases, investor presentations, and other materials provided to the SEC, securities analysts, money and portfolio managers and investors, *i.e.*, the market. The Individual Defendants authorized the publication of the documents, presentations, and materials alleged herein to be misleading prior to their issuance and had the ability and opportunity to prevent the issuance of

these false statements or to cause them to be corrected. DigitalOcean's SEC filings stated that the Individual Defendants were the parties responsible for evaluating the effectiveness of the Company's internal controls, and each Individual Defendant certified that he had reviewed the Company's controls and found them to be effective. Because of their positions and responsibilities within the Company and access to material non-public information available to them but not to the public, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations being made were false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

## MATERIALLY FALSE AND MISLEADING STATEMENTS

25.    The Class Period begins on February 16, 2023. On that day, DigitalOcean issued a press release, filed with the SEC on Form 8-K, announcing its financial results for fiscal year 2022 ("February 16 8-K"). DigitalOcean provided condensed consolidated financial statements for the year ended December 31, 2022, in the February 16 8-K, which included a Net loss attributable to common stockholders (a measure of the Company's loss after subtracting dividends paid to preferred shareholders) of $24.3 million.

26.    On February 23, 2023, Digital Ocean filed its Annual Report for the year ended December 31, 2022, with the SEC on Form 10-K ("2022 10-K"). The 2022 10-K repeated the financial statements originally published in the February 16 8-K, including the $24.3 million reported net loss attributable to common stockholders.

27.    The 2022 10-K further assured investors that the Company's management had established, reviewed, and found effective DigitalOcean's internal controls over financial reporting:

Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of December 31, 2022. ***Based on the evaluation of our disclosure controls and procedures as of December 31, 2022, our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective at the reasonable assurance level.***

\*     \*     \*

Our management is responsible for establishing and maintaining adequate "internal control over financial reporting," as defined in Rule 13a-15(f) and Rule 15d-15(f) under the Exchange Act. Our management conducted an evaluation of the effectiveness of our internal control over financial reporting as of December 31, 2022 based on the criteria established in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission.

***Based on the results of its evaluation, management concluded that our internal control over financial reporting was effective as of December 31, 2022.*** Our independent registered public accounting firm, Ernst & Young LLP, has issued an auditors' report on the effectiveness of our internal control over financial reporting, which is included in Item 8 of this Annual Report on Form 10-K.

(emphasis added)

28.    Attached to the 2022 10-K were certifications dated February 22, 2023, and signed

by Defendants Steinfort and Spruill pursuant to Section 302 of the Sarbanes-Oxley Act of 2002.

The Individual Defendants each certified:

3.Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a–15(e) and 15d–15(e)) for the registrant and have:

a.Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

\*        \*        \*

c. Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

29.     The statements identified above were materially false and misleading and failed to disclose that DigitalOcean and the Individual Defendants had failed to establish adequate controls over the Company's financial reporting. As alleged herein, Defendants misled investors by misrepresenting and/or failing to disclose that: (1) Defendants lacked the skills and experience to assess complicated tax matters and therefore did not design or maintain effective controls over the Company's accounting for income taxes; and (2) that, as a result of the foregoing, Defendants' financial statements were inaccurate and materially misleading.

30.     On May 9, 2023, DigitalOcean filled its Quarterly Report for the quarter ended March 31, 2023, with the SEC on Form 10-Q ("1Q 2023 10-Q"). The 1Q 2023 10-Q was signed

by Defendants Spruill and Steinfort. It assured investors that Defendants had reviewed the Company's internal controls and found them to be adequate:

> We maintain "disclosure controls and procedures," as defined in Rule 13a-15(e) and Rule 15d-15(e) under the Exchange Act that are designed to ensure that information required to be disclosed by a company in the reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported, within the time periods specified in the SEC's rules and forms.
>
> \*     \*     \*
>
> Our management, with the participation of our Chief Executive Officer and our Chief Financial Officer, evaluated the effectiveness of our disclosure controls and procedures as of March 31, 2023. Based on the evaluation of our disclosure controls and procedures as of March 31, 2023, ***our Chief Executive Officer and Chief Financial Officer concluded that, as of such date, our disclosure controls and procedures were effective at the reasonable assurance level***.

(emphasis added)

31.     The 1Q 2023 10-Q was accompanied by Sarbanes-Oxley Act certifications signed by Defendants Spruill and Steinfort, making representations materially identical to those identified in ¶28.

32.     The statements identified above were materially false and misleading and failed to disclose that DigitalOcean and the Individual Defendants had failed to establish adequate controls over the Company's financial reporting. As alleged herein, Defendants misled investors by misrepresenting and/or failing to disclose that: (1) Defendants lacked the skills and experience to assess complicated tax matters and therefore did not design or maintain effective controls over the Company's accounting for income taxes; and (2) that, as a result of the foregoing, Defendants' financial statements were inaccurate and materially misleading.

**THE TRUTH EMERGES**

33.    On August 3, 2023, at approximately 4:01 p.m. EDT, DigitalOcean filed a press release on Form 8-K with the SEC, announcing its financial results for the second quarter of 2023, ended June 30, 2023 ("August 3 8-K"). The Company explained that it had:

> identified certain errors within the unaudited condensed consolidated financial statements for the quarter ended March 31, 2023 as included in our Quarterly Report on Form 10-Q for the three months ended March 31, 2023 filed on May 9, 2023. Specifically, there were errors in our accounting for income tax expense primarily relating to the calculation of certain capitalized research or experimental expenditures under Section 174 of the Internal Revenue Code of 1986 which impacted our income tax provision ("Section 174 Error"). Primarily as a result of the Section 174 Error, accrued taxes as of March 31, 2023 were overstated and the income tax expense for the three months ended March 31, 2023 was overstated by approximately $18 million. Additionally, the Company is correcting other immaterial errors.

34.    The August 3 8-K further revealed that the Company would file an amendment to its Q1 2023 10-Q, which would "**also include disclosure of an identified material weakness and that our disclosure controls and procedures were not effective as of March 31, 2023**." (emphasis added). The August 3 8-K went on to reveal that the "**material weakness also existed as of December 31, 2022**" and that the Company would therefore file "an amendment to our Annual Report on Form 10-K for the year ended December 31, 2022" which had originally been filed on February 22, 2023, as Ernst & Young, LLP ("E&Y"), the Company's accountant, had "determined that its report on internal control over financial reporting as of December 31, 2022 will be revised to an adverse opinion that internal control over financial reporting was ineffective and will be reissued." DigitalOcean further stated: "[W]e are still finalizing the impact of these errors on our financials"

35.     DigitalOcean also lowered the total revenue guidance for 2023 in the August 3 8-K, to a range of $680 to $685 million. The Company had previously guided 2023 revenue in the range of $700 to $720 million on May 9, 2023.

36.     On this news, the price of DigitalOcean shares fell $11.57 per share, or approximately 24.8%, on unusually heavy trading volume to close at $35.11 per share on the following trading day, August 4, 2023, after closing at $46.68 on August 3, 2023.

37.     On August 9, 2023, at approximately 4:19 p.m. EDT, DigitalOcean filed a Form 12b-25 Notification of Late Filing with the SEC, announcing that it would be "unable to file its Quarterly Report on Form 10-Q for the fiscal quarter ended June 30, 2023 . . . within the prescribed time period, without unreasonable effort or expense, due to the circumstances previously disclosed" in the August 3 8-K. DigitalOcean further stated: "As a result of the errors described above and the related restatement, the Company has identified a material weakness in its internal control over financial reporting ('**ICFR**'). The Company's management concluded that the Company's disclosure controls and procedures ('**DCP**') and ICFR were not effective as of December 31, 2022 and the Company's DCP were not effective as of March 31, 2023 because of this material weakness." (emphasis in original).

38.     Also on August 9, 2023, at approximately 4:30 p.m. EDT, DigitalOcean held its Q2 2023 Earnings Conference Call. Defendants Spruill and Steinfort participated in the call. Defendant Steinfort stated:

> I'd like to provide some context on the material weakness and the tax expense error described in the 8-K we filed earlier today. Over the past several months, we have made meaningful upgrades to our tax capabilities and expertise. With new tax leadership recently in place and with the support of incremental third-party tax advisers, we identified an error in our tax expense calculation related to the treatment of R&D expense in the context of Section 174.

The error had an immaterial impact on our full year 2022 financials but did
have a material impact on our reported Q1 2023 financials and rose to the level
of a material weakness in both periods. The correction of the roughly $18
million overstatement of Q1 tax expense will result in lower net loss and
higher non-GAAP earnings per share in Q1 of 2023 and will result in a lower
net operating loss balance as of December 31, 2022.

39.    On August 11, 2023, at approximately 5:04 p.m. EDT, DigitalOcean filed an

amendment to its Annual Report on Form 10-K for the year ended December 31, 2022 ("2022 10-

K/A"). DigitalOcean stated that it: "identified errors primarily related to the Company's

accounting for income tax expense, of which $3.5 million results in the understatement of its

reported loss for the year ended December 31, 2022." Accordingly, DigitalOcean revised its net

loss attributable to common stockholders from $24.3 million, as originally reported in the February

16, 2023 8-K and 2022 10-K, to $27.8 million.

40.    The 2022 10-K/A purported to explain the disclosure control and procedures

deficiency as follows:

> Our management, with the participation of our Chief Executive Officer and
> Chief Financial Officer, evaluated the effectiveness of our disclosure controls
> and procedures as of December 31, 2022. Based on that evaluation, at the time
> the Annual Report on Form 10-K was filed on February 22, 2023, our Chief
> Executive Officer and our Chief Financial Officer, concluded that, as of
> December 31, 2022, our disclosure controls and procedures were effective at
> the reasonable assurance level.
>
> Subsequent to that evaluation, our Chief Executive Officer and our Chief
> Financial Officer concluded that, as of December 31, 2022, our disclosure
> controls and procedures were not effective at the reasonable assurance level
> due to the material weakness in our internal control over financial reporting
> described below.
>
> *       *       *
>
> We did not design and maintain effective controls over the accounting for
> income taxes. Specifically, we did not have the appropriate skills and level of
> experience to assess complicated tax matters. Additionally, we did not properly
> identify, risk assess, design and maintain effective controls related to the

income tax provision, including controls related to the evaluation of tax deductions and the impact on our tax provision. This material weakness resulted in immaterial errors to the income tax expense, deferred taxes, accrued tax liabilities and income tax disclosures in the 2022 consolidated financial statements. This material weakness could result in a misstatement of the aforementioned account balances or disclosures that would result in a material misstatement to the annual or interim financial statements that would not be prevented or detected.

Management subsequently concluded that the material weaknesses described above existed as of December 31, 2022. As a result, we have concluded that we did not maintain effective internal control over financial reporting as of December 31, 2022, based on the criteria in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. Accordingly, management has revised its report on internal control over financial reporting.

41.     DigitalOcean's 2022 10-K/A laid out a "Remediation Plan with Respect to Material Weakness" which included its March 2023 hiring of a VP of Tax, augmenting its team with additional tax personnel "with the appropriate knowledge, training and experience . . . to design and maintain appropriate accounting policies, procedures and controls," supplementing the Company's "tax resources" with the use of a third-party tax advisor, and beginning to "design and implement controls to address the identification, accounting, reporting and review of complex tax transactions."

42.     The 2022 10-K/A included the report of E&Y, DigitalOcean's independent registered accounting firm. E&Y reported that in its opinion, DigitalOcean:

has not maintained effective internal control over financial reporting as of December 31, 2022 . . . The following material weakness has been identified and included in management's assessment. Management did not design and maintain effective controls over the accounting for income taxes. Specifically, management did not have the appropriate skills and level of experience to assess complicated tax matters. Additionally, management did not properly identify, risk assess, design and maintain effective controls related to the income tax provision, including controls related to the evaluation of tax deductions and the impact on the tax provision.

43.     Also on August 11, 2023, DigitalOcean filed an amendment to its Quarterly Report

on Form 10-Q For the three months ended March 31, 2023, originally filed with the SEC on May

9, 2023 ("1Q 2023 10-Q/A"). The 10-Q/A explained:

> As previously disclosed in the Company's Current Report on Form 8-K, filed
> on August 3, 2023, management determined that the Company's previously
> issued unaudited condensed consolidated financial statements for the three
> months ended March 31, 2023, as included in the Company's Quarterly Report
> on Form 10-Q for the three months ended March 31, 2023 filed with the SEC
> on May 9, 2023 (the "First Quarter 2023 10-Q"), should no longer be relied
> upon due to the discovery, in the course of preparing the Company's interim
> financial statements for the fiscal quarter ended June 30, 2023, of errors in the
> Company's accounting for income tax expense primarily relating to the
> calculation of certain capitalized research or experimental expenditures under
> Section 174 of the Internal Revenue Code of 1986, which impacted the
> Company's income tax provision ("Section 174 Error") resulting in
> adjustments to other current liabilities, deferred tax assets and tax expense
> (benefit). Additionally, in connection with the restatement, the Company is
> correcting other immaterial errors.
>
> As a result of the Section 174 Error, accrued taxes as of March 31, 2023 were
> overstated and the income tax expense for the three months ended March 31,
> 2023 was overstated by approximately $15 million. Additionally, the Company
> is correcting other immaterial errors, which includes the following: an income
> tax error related to transfer pricing reduced tax expense by approximately $4
> million; and other immaterial errors that impacted operating lease right-of-use
> assets, net, operating lease liabilities, current, operating lease liabilities, non-
> current and sales and marketing expenses.The Company concluded these errors
> relating to the three months ended March 31, 2023 and other previously
> identified immaterial errors relating to the year ended December 31, 2022,
> which were originally recorded as out-of-period adjustments in the three
> months ended March 31, 2023, in aggregate, were material to the condensed
> consolidated financial statements. Therefore, the Company has corrected the
> errors and restated the previously issued unaudited condensed consolidated
> financial statements for the three months ended March 31, 2023.

44.     On August 24, 2023, at approximately 4:33 p.m. EDT, DigitalOcean filed a Form

8-K with the SEC announcing that the Board was implementing a "leadership succession plan to

identify the Company's next CEO," replacing Defendant Spruill. The 8-K stated that Spurill would

"continue to serve as Chief Executive Officer until a successor has been appointed, at which point he will step down from his role and as a member of the Board."

45.     On the following trading day, August 25, 2023, the price of DigitalOcean shares fell to a close of $28.86 per share, down $2.65 per share, or 8.4%, from the previous day's close of $31.51 per share. Financial news website The Motley Fool reported: "The market was clearly taken aback by this announcement[ of Spruill's resignation], which is why DigitalOcean stock was down…"

## CLASS ACTION ALLEGATIONS

46.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired DigitalOcean securities between February 16, 2023, and August 25, 2023, inclusive. Excluded from the Class are Defendants, directors and officers of the Company, as well as their families and affiliates.

47.     The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. Throughout the Class Period, DigitalOcean's shares actively traded on the New York Stock Exchange. Although the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of DigitalOcean shares were publicly traded during the Class Period on the New York Stock Exchange.  Record owners and other members of the Class may be identified from records maintained by DigitalOcean or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

    a.  Whether Defendants violated the Exchange Act;

    b.  Whether Defendants omitted and/or misrepresented material facts;

    c.  Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d.  Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

    e.  Whether the price of the Company's securities was artificially inflated; and

    f.  The extent of damage sustained by Class members and the appropriate measure of damages.

49.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct alleged herein.

50.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the Class.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FRAUD ON THE MARKET

52.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine that, among other things:

    a.  Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

    b.  The omissions and misrepresentations were material;

    c.   The Company's securities traded in efficient markets;

    d.   The misrepresentations alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

    e.   Plaintiff and other members of the class purchased the Company's securities between the time Defendants misrepresented or failed to disclose material facts and the time that the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

53.     At all relevant times, the markets for the Company's securities were efficient for the following reasons, among others: (i) the Company filed periodic public reports with the SEC; and (ii) the Company regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures such as communications with the financial press, securities analysts, and other similar reporting services. Plaintiff and the Class relied on the price of the Company's securities, which reflected all information in the market, including the misstatements by Defendants.

**NO SAFE HARBOR**

54.     The statutory safe harbor provided for forward-looking statements under certain conditions does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were either not identified as forward-looking statements when made, or, to the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

**LOSS CAUSATION**

55.     After the close of trading on August 3, 2023, DigitalOcean announced a material weakness in its financial reporting that would require the company to restate financial statements contained in its 2022 10-K and 1Q 2023 10-Q, and revealing as false the Individual Defendants' prior certifications attesting that the Company's internal controls were effective. On the following trading day, August 4, 2023, the price of DigitalOcean shares fell $11.57 per share, or approximately 24.8%, on unusually heavy trading volume to close at $35.11 per share on the following trading day, as compared to DigitalOcean's previous close of $46.68 per share on August 3, 2023.

56.     After the close of trading on August 24, 2023, DigitalOcean revealed that it would replace Defendant Spruill as CEO. On the following trading day, August 25, 2023, the price of DigitalOcean shares fell to a close of $28.86 per share, down $2.65 per share, or 8.4%, from the previous day's close of $31.51 per share.

57.     These revelations contradicted statements made by Defendants during the Class Period and were a causal element of the concurrent decline in the Company's share price.

**SCIENTER ALLEGATIONS**

58.     As alleged herein, Defendants acted with scienter since Defendants knew or recklessly disregarded that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew or recklessly disregarded that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced  controls in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, who were responsible for overseeing the Company's internal controls and certified that they had reviewed and found those controls to be

effective, and by virtue of their access to information reflecting the true facts regarding DigitalOcean, their control over, and/or receipt and/or modification of DigitalOcean's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning DigitalOcean, participated in the violations of the Exchange Act alleged herein.

<u>Count One</u>
**Violations of § 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**
**(Against All Defendants)**

59. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

60. During the Class Period, Defendant DigitalOcean and the Individual Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

61. Defendant DigitalOcean and the Individual Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon those who purchased or otherwise acquired the Company's securities during the class period.

62. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for the Company's securities. Plaintiff and the Class would not have purchased the Company's securities at the price paid, or at all, if they had

been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

<u>Count Two</u>
**Violation of § 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

63.      Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

64.      The Individual Defendants acted as controlling persons of the Company within the meaning of § 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions at the Company, the Individual Defendants had the power and authority to cause or prevent the Company from engaging in the wrongful conduct complained of herein. The Individual Defendants were provided with or had unlimited access to the documents described above that contained statements alleged by Plaintiff to be false or misleading both prior to and immediately after their publication, and had the ability to prevent the issuance of those materials or to cause them to be corrected so as not to be misleading.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)      determining that this action is a proper class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class as defined herein, and a certification of Plaintiff as class representative pursuant to Rule 23 of the Federal Rules of Civil Procedure and appointment of Plaintiff's counsel as Lead Counsel;

(b)      awarding compensatory and punitive damages in favor of Plaintiff and the other class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon.

(c)     awarding Plaintiff and other members of the Class their costs and expenses in this

litigation, including reasonable attorneys' fees and experts' fees and other costs and disbursements;

and

(d)     awarding Plaintiff and the other Class members such other relief as this Court may

deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated: September 12, 2023                      Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
**BLOCK & LEVITON LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com

*Attorney for Plaintiff and Proposed Lead
Counsel*